UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK

LORENZO ELLIS,

    Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION, PATRICIA CANTINA, Principal of M.S. 224,

    Defendants.

No. 19 Civ. 1441 (LAP)



LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff Lorenzo Ellis ("Ellis" or "Plaintiff"), brings this action asserting claims for unlawful discrimination, hostile work environment, and retaliation against defendants New York City Department of Education ("DOE") and Patricia Catania[1] ("Catania") pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, et. seq. ("Title VII"), 42 U.S.C. § 1983, and New York Labor Law § 741. (First Amended Complaint, dated May 16, 2019 ("Complaint") [dkt. no. 8].) Defendants have moved to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (See Notice of Motion, dated Aug. 12, 2019 [dkt. no. 17].) For the reasons set forth below, Defendants' motion is GRANTED.

---

[1] Catania is incorrectly identified in the Complaint as "Patricia Cantina." In the interest of avoiding potential confusion, the Court refers to Catania by her actual name.

1

I. **Background**[2]

Ellis, an African-American male social worker, was employed by the DOE from November 2015 until September 2017. (Compl. ¶ 8.) From June 2016 until his termination in September 2017, Ellis was assigned to Intermediate School M.S. 224 ("M.S. 224"). (Id. ¶ 9.) At M.S. 224, Ellis provided counseling to students with psychological and social problems in both an individual and group setting. (Id. ¶¶ 13-14.) Minority students make up the majority of M.S. 224's student population. (Id. ¶ 52.)

In January 2017, Catania became principal of M.S. 224. (Id. ¶17.) Ellis alleges that Catania "treated Plaintiff differently from the other social workers who were white." (Id. ¶¶ 62-63.) Specifically, Ellis contends that Catania subjected him to multiple work evaluations within a two-week period in April and May 2017, although "[w]hite employees were not subjected to this kind of work evaluations schedule." (Id. ¶¶ 58-61.) Ellis also alleges that Catania, upon her arrival at M.S. 224, instituted various changes to Ellis's counseling practice, including: limiting Ellis's private sessions with students, requiring Ellis to engage in a "restorative circle,"[3]

---

[2] The following facts are taken from the Complaint and assumed to be true for purposes of deciding Defendants' motion.
[3] The "restorative circle" appears to be a group counseling procedure instituted by Cantina, though its details or purposes are not made clear by the Complaint.

2

and depriving him of the necessary space to engage in his work. (Id. ¶¶ 21-24.) Ellis was also concerned when he observed students carrying desks and chairs up and down the stairs. (Id. ¶ 19.)

In addition to Catania's conduct, Ellis claims that Catania made various discriminatory comments. Ellis asserts that Cantina "voiced [] not wanting minority teachers and social workers working in her school." (Id. ¶ 64.) Ellis also recounts a staff meeting in which Catania suggested that the parents of absent or late-arriving students were lazy. (Id. ¶¶ 50-52.)

Ellis further alleges that, at some point, he complained to Catania that these practices were "damaging to students with emotional needs" but Catania ignored his requests. (Id. ¶¶ 23, 26.) On February 4, 2017, Ellis sent an email to Chrisanne Petrone, the hiring manager for the Single Shepherd Initiative,[4] detailing his concern about the effect of Catania's policies on students with emotional problems. (Id. ¶¶ 31-34.)

On February 14, 2017, at the request of the school's administration, Ellis met with two senior administrators, who

---

[4] According to the DOE, the Single Shepherd Initiative "pairs students with dedicated counselors who will see them through high school graduation into college in order to improve outcomes, especially for at-risk students." (Defendants' Memorandum of Law, dated Aug. 12, 2019 ("Def. Br.") [dkt. no. 19] at 2-3 n.3.)

3

reprimanded Ellis for sending "complaining" emails, failing to complete his home visits, and failing to respond to emails. (Id. ¶¶ 37-42.) Ellis responded that the home visits "were only to be done when necessary" and provided proof that he responded to emails. (Id. ¶¶ 41, 43.) The administrators then informed Ellis that a disciplinary note would be placed in his file for his failure to respond to emails and further warned that he "was going to be fired if he continued to send [complaining] emails." (Id. ¶ 43.)

Ellis alleges that at some unspecified time following this meeting, he was "required to do a round table meeting with some teachers and administration" and was subsequently told by someone that he had "performed very well." (Id. ¶ 46.) Less than forty-eight hours after the round table meeting, however, Ellis was informed by another unspecified person that his employment was "unsatisfactory."[5] (Id. ¶ 47.) At some point in April 2017, Ellis received a satisfactory work evaluation but underwent a second work evaluation two weeks later, although such evaluations typically take place "one or two months" apart. (Id. ¶¶ 58-59.) In the May evaluation, his work was deemed unsatisfactory. (Id. ¶ 59.)

---

[5] It is unclear on the face of the complaint when the initial round table meeting occurred and, more importantly, whether the subsequent unsatisfactory review corresponds to the May 2017 evaluation or was a separate negative review.

4

Ellis's employment was terminated in September 2017. (Id. ¶ 56.) On November 15, 2018, the Equal Employment Opportunity Commission ("EEOC") issued a right-to-sue letter to Ellis. (Id. ¶ 69.) On February 14, 2019, Ellis commenced the instant action pursuant to Title VII, 42 U.S.C. § 1983, and New York Labor Law § 741, alleging discrimination, hostile work environment, and retaliation by Catania and the DOE.

**II. Legal Standard**

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). To survive dismissal, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). Put differently, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557 (internal quotation marks omitted).

### III. Discussion

#### a. Title VII & § 1983 Discrimination Claims

Defendants argue that Ellis's claim of racial discrimination rests upon conclusory allegations without sufficient factual assertions and must be dismissed. In cases alleging discrimination in the employment context, a plaintiff need not provide "substantial evidence of discriminatory intent" at the initial stage of the litigation but still has the "minimal burden of showing facts suggesting an inference of discriminatory motivation" to satisfy his prima facie requirements. Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). Consequently, a plaintiff may establish these requirements under Title VII and § 1983 by showing that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Ruiz v. Cty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010). Such circumstances may include "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (internal quotations omitted).

6

Defendants argue that Ellis's claim sets forth only conclusory statements and bare-boned assertions of discrimination with respect to Catania's conduct and comments, which cannot create an inference of discrimination. (Def. Br. at 7-8.) First, Defendants contend that the Complaint offers no facts to suggest that the changes Catania made were instituted on the basis of the students' or Ellis's race. (Id.) Ellis merely concluded Catania instituted "discriminatory policies," without more. (Compl. ¶ 55.) Further, they argue Ellis himself indicated that his disapproval of Catania's policies--namely elimination of private sessions and creation of the restorative circle--arose from his belief that such practices were "damaging to students with emotional needs" rather than because they discriminated against minority students. (Compl. ¶ 23.)

Second, Defendants argue that Ellis's claim of less favorable treatment compared to similarly situated white employees fails because he has not demonstrated that any other employees were "sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" (Def. Br. at 8 (citing Newsome v. IDB Capital Corp., No. 13 Civ. 6576 (VEC), 2016 U.S. Dist. LEXIS 40754, at *45-46 (S.D.N.Y. Mar. 28, 2016)). Defendants further argue that Ellis's contention that Catania "treated minority employees . . . different[ly] from the way she

treated White employees" and "treated Plaintiff differently from the social workers who were white" is too conclusory to establish an inference of discriminatory intent. Id. In response, Ellis directs the Court to his affirmation, in which he refers generally to his coworkers' qualifications, duties, responsibilities, and standards for performance evaluations. (Plaintiff's Memorandum of Law, dated Sep. 23, 2019 ("Opp.") [dkt. no. 22] at 5.)

Finally, Defendants argue that Ellis's failure to allege a causal link between Catania's alleged comments and termination defeats any plausible inference of discrimination. They point out that the Complaint provides no details or context about Catania's comment that she did not want minority teachers and social workers at M.S. 224 (including where, when, and to whom it was made), which prevents an inference of a causation with respect to the adverse employment action. Further, Defendants argue Catania's suggestion that certain parents were lazy cannot establish racially discriminatory intent simply because a majority of the student populace consisted of minorities.

The Court concludes that the Complaint as currently pleaded is too conclusory and devoid of specific facts to meet the plaintiff's burden with respect to discrimination. Ellis wishes the Court to infer that Catania's policies, which Ellis felt would harm the students' emotional needs, were

8

discriminatory merely because a majority of M.S. 224's students were minorities. But "[n]aked assertions of . . . discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristics are too conclusory to withstand a motion to dismiss." Sanders-Peay v. N.Y.C. Dep't of Educ., No. 14-cv-4534 (CBA) (MDG), 2014 U.S. Dist. LEXIS 161506, at *8 (E.D.N.Y. Nov. 18, 2014) (citations omitted). Without pointing to specific facts, Ellis's repeated assertions that Catania's policy changes were discriminatory are thus merely conclusory. (Compl. ¶¶ 52-55.) See also Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 175 (2d Cir. 2010) ("[F]acts consistent with a discrimination claim . . . nevertheless stop short of the line between possibility and plausibility of entitlement to relief, because plaintiffs do not allege any facts supporting an inference of racial animus.") (internal quotations omitted).

Similarly, Ellis's assertion that he was treated less favorably than white employees cannot support a plausible discrimination claim. "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Brown v. Daikin, 756 F.3d 219, 230 (2d Cir. 2014). Ellis's Complaint fails to establish both specific individuals as comparators and the material respects in

9

which they were similarly situated but treated differently.[6] See Mohan v. City of New York, No. 17-cv-3820(KPF), 2018 U.S. Dist. LEXIS 130933, at *31-32 (S.D.N.Y. Aug. 3, 2018) (dismissing discrimination claim upon plaintiff's failure to detail specific work duties of a named comparator with identical work title).

Finally, Catania's comments, considered alongside her conduct, fail to create an inference of discrimination. "Remarks may raise an inference of discrimination if there is a nexus between the remarks and an adverse employment decision." Mesias v. Cravath, Swaine & Moore LLP, 106 F. Supp. 3d 431, 448 (S.D.N.Y. 2015). But here, without sufficient indication of when--or in what context--the comments were made, there can be no causal link with Ellis's termination. See Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149 (2d Cir. 2010) (noting timing and context of remarks are two of four factors to determine if remarks are probative of discriminatory intent). Without any facts as to when, where, to whom, or in what context Catania "voiced [] not wanting minority teachers and social workers" to work at M.S. 224, the Court cannot reasonably infer a nexus

---

[6] The Court does not consider the factual allegations that arise from Ellis's affirmation. Courts in the Second Circuit generally "do not look beyond facts stated on the face of the complaint." Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016). In exceptional circumstances, "a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" deemed "integral" may be considered, but that is not the case here. Id.

between those remarks and Ellis's termination. (Compl. ¶ 64.) The mere fact that minorities constitute the majority of the school population cannot, on its own, fill the factual gaps left in Ellis's Complaint with respect to discrimination. Ellis's discrimination claim, as currently formulated, thus fails.

    b. Title VII & § 1983 Hostile Work Environment Claims

Ellis's hostile work environment claim is similarly conclusory and lacks sufficient factual allegations to meet his initial burden. "To establish a hostile work environment under Title VII . . . or § 1983, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Littlejohn, 795 F.3d at 320-21 (internal quotations omitted). Courts look to the totality of the circumstances, including the frequency and severity of the discrimination, to determine whether a work environment is sufficiently hostile to rise to the level of an actionable claim. See Harris v. Forklift Sys., 510 U.S. 17, 21-23 (1993). Ellis's claims are almost entirely conclusory; he alleges he was subjected to "abuse and [a] hostile situation at work." (Compl. ¶¶ 54, 66.) The complaint therefore lacks sufficient factual allegations of specific and pervasive instances of hostility that "unreasonably interfer[ed] with [his] work performance."

Harris, 510 U.S. at 23. The hostile work environment claim is therefore dismissed.

### c. Title VII & § 1983 Retaliation Claim

Ellis's Complaint also asserts retaliation claims against Catania and DOE flowing from various adverse employment actions allegedly taken in response to Ellis's opposition to their discriminatory practices and policies. (Compl. ¶¶ 49, 54-55, 65.) Defendants argue that the retaliation claim fails because Ellis has not engaged in protected activities and, even if he did, there was no causal connection between any such activities and any adverse employment action. (Def. Br. at 14-15.) To state a claim for retaliation under both Title VII and § 1983, "a plaintiff must plead facts that would tend to show that: (1) []he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging [him]; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007); see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015) ("the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII").

With respect to the protected activity requirement, Ellis alleges "[t]he decision to terminate [him] at the end of the

school year was motivated by his complaint . . . noting the jeopardy a student could face due to improper emotional counseling" and his continued emails objecting to the efficacy of Catania's policies. (Compl. ¶¶ 43, 48.) But "'[p]rotected activity' refers to action taken to protest or oppose statutorily prohibited discrimination," not concern over the effect of a policy change. Cruz v. Coach Stores, 202 F.3d 560, 566 (2d Cir. 2000). Ellis's concerns were chiefly focused on "the problems he believed students with emotional problems would face" under Catania's practices, not an allegation of race-based discrimination. (Compl. ¶¶ 30-34, 39, 48.) His conclusion that he was terminated because "he was opposed to [Catania's] discriminatory policies" fails to point to any facts reflecting his opposition to race-based discrimination. (Compl. ¶ 55.)

Moreover, even if Ellis's complaints to Catania were deemed a protected activity, Ellis fails to "plead facts that would tend to show . . . a causal connection between the protected activity" and his termination. Patane, 508 F.3d at 115. There are two paths for proving causation, either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant."

13

Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000). Because Ellis has not alleged any non-conclusory facts showing direct discriminatory animus, the Court turns to the indirect path. "Temporal proximity" between the protected activity and adverse employment action is one such way to establish causation indirectly. Murray v. Visiting Nurse Servs. of New York, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007). But "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." Id. Here, the purported protected activities, namely Ellis's complaints to Catania and others, took place in January and February 2017; Ellis was terminated in September 2017. (Compl. ¶¶ 20-21, 23-25, 31-34, 56). The length of this period alone, nearly seven months, thus breaks the causal link required for retaliation. The retaliation claim therefore fails.

### d. Municipal Liability Claim Under § 1983

Defendants assert that, irrespective of their preceding arguments that Ellis's claims should be dismissed in their entirety all claims against DOE, specifically, must be dismissed because Ellis has not stated a claim for municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Under Monell, municipal liability arises only if the deprivation

of the plaintiff's rights was due to a municipal policy or custom. Id. at 690-91. "Absent such a custom . . . a municipality cannot be held liable on a respondeat superior basis." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012). Accordingly, the Court may find a municipal policy or custom in "(1) an express policy, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled to constitute a custom or usage with the force of law, or (3) a decision by a person with final policymaking authority." Stukes v. City of New York, No. 13-6166 (NGG) (VVP), 2015 U.S. Dist. LEXIS 33223, at *39-40 (E.D.N.Y. Mar. 17, 2015) (internal citations and quotation marks omitted).

Because Ellis alleges neither discrimination by an express policy nor facts amounting to a "permanent and well settled" widespread practice of discrimination at M.S. 224, he must rely on the argument that Catania was a "person with final policymaking authority." Id. However, courts in this Circuit have held that DOE principals "do not have final policymaking authority over employment decisions concerning teachers in their schools as a matter of law." Harewood v. N.Y.C. Dep't of Educ., No. 18-05487, 29 U.S. Dist. LEXIS 78872, at *32 (S.D.N.Y. May 8, 2019), adopted by 2019 U.S. Dist. LEXIS 89672 (S.D.N.Y. May 29, 2019); see also Shapiro v. N.Y.C. Dep't of Educ., 561 F. Supp.

15

2d 413, 420 (S.D.N.Y. 2008) (holding principals do not have final policy making authority over employment decisions). The Court therefore concludes that Catania's "decision to fire one man, for whatever reason," was a "personnel decision . . . that falls [] outside the common understanding of the word 'policy.'" Collins v. Stasiuk, 56 F. Supp. 2d 344, 345 (S.D.N.Y. 1999). Accordingly, Ellis's theory of municipal liability fails.

  e. New York Health Care Whistleblower Claim Under § 741

Defendants also move to dismiss Ellis's claim brought under New York's Health Care Whistleblower Law, Labor Law § 741, for failing to articulate the harm to a specific patient or the public-at-large. (Def. Br. at 17.) Labor Law § 741 prohibits an employer from retaliating against an employee because the employee discloses, threatens to disclose, objects to, or refuses to participate in "an activity, policy or practice of the employer . . . that the employee, in good faith, reasonably believes constitutes improper quality of patient care." N.Y. Labor Law § 741(2)(a), (b); see also Galbraith v. Westchester Cty. Health Care Corp., 140 A.D.3d 696, 697-98 (2d Dep't 2016) (examining § 741). Importantly, "improper quality of patient care," as defined in the statute, must relate "to matters which may present a substantial and specific danger to public health or safety or a significant threat to the health of a specific patient." § 741(1)(d). To state a claim, then, "the complaint

16

need not specify the actual law, rule or regulation violated, [but] it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." Hutchison v. Kings Cty. Hosp. Ctr., 139 A.D.3d 673, 676 (2d Dep't 2016) (citation and quotations omitted).

Defendants argue that Ellis's complaints during his employment at M.S. 224 consisted of merely generalized and vague threats to student health, amounting to speculative harm and not "a present harm that imperiled the public or the safety of specific students." (Def. Br. at 20.) Courts have construed "substantial and specific," as used in the statute, to "require more than 'mere speculation.'" Pugliese v. Actin Biomed LLC, No. 193914/2012, 2012 N.Y. Misc. LEXIS 2832, at *6-7 (Sup. Ct., N.Y. Cty. June 7, 2012) (sustaining claim for retaliation against employee for reporting data falsification and failure to adhere to safety regulations in drug trials). Moreover, § 741 "clearly envisions a certain quantum of dangerous activity before its remedies are implicated." Peace v. KRNH, Inc., 12 A.D.3d 914, 915 (3d Dep't 2004) (denying motion to dismiss where plaintiff reported that respiratory treatments were documented but not actually performed).

Accordingly, the Court concludes that Ellis has alleged merely speculative and generalized--rather than substantial and specific--harm. (See Compl. ¶¶ 19, 21, 23, 34, 48 (noting various hypothetical and vague harms: a "damaging" approach by Catania; a situation that was "not conducive" to students' psychological well-being; a potential "safety hazard"; and a concern about the "jeopardy a student could face due to improper emotional counselling").) Each allegation merely speculates as to a potential consequence rather than pleading an actual harm. Ellis's whistleblower claim thus fails as well.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 17] is GRANTED. The Clerk of the Court is directed to mark this action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated:   New York, New York
         March ___, 2020

                                  _____
                                  Loretta A. Preska
                                  Senior U.S. District Judge

Accordingly, the Court concludes that Ellis has alleged merely speculative and generalized--rather than substantial and specific--harm. (See Compl. ¶¶ 19, 21, 23, 34, 48 (noting various hypothetical and vague harms: a "damaging" approach by Catania; a situation that was "not conducive" to students' psychological well-being; a potential "safety hazard"; and a concern about the "jeopardy a student could face due to improper emotional counselling").) Each allegation merely speculates as to a potential consequence rather than pleading an actual harm. Ellis's whistleblower claim thus fails as well.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 17] is GRANTED. The Clerk of the Court is directed to mark this action closed and all pending motions denied as moot.

**SO ORDERED.**

Dated: New York, New York
March //, 2020

*/s/ Loretta A. Preska*
Loretta A. Preska
Senior U.S. District Judge